DANIEL L. KELLER (SBN 191738)
**KELLER, FISHBACK & JACKSON LLP**
28720 Canwood Street, Suite 200
Agoura Hills, CA 91301
Telephone:  818.342.7442
Facsimile:   818.342.7616
Email: dkeller@kfjlegal.com

STEPHEN J. FEARON, JR. (subject to *pro hac vice*)
PAUL V. SWEENY (subject to *pro hac vice*)
**SQUITIERI & FEARON, LLP**
305 Broadway, 7th Fl.
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**Attorneys for Plaintiffs and the Proposed Class**

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE FINCH and NAM TAO, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>AROVAST CORPORATION d/b/a COSORI CORPORATION,<br><br>　　　　Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jeannette Finch and Nam Tao ("Plaintiff"), on behalf of themselves and all others similarly situated, by their attorneys, allege the following upon information and belief, except for those allegations pertaining to Plaintiffs, which are based on their personal knowledge:

## NATURE OF THE ACTION

1. This action arises from unfair and deceptive business practices by Defendant Arovast Corporation d/b/a Cosori Corporation ("Cosori" or "Defendant") in manufacturing, distributing, marketing, and selling more than two million defective air fryers that could catch fire ("Products"). [1]

2. Between June 2018 and December 2022, Cosori manufactured, distributed, marketed, and sold 2.25 million Products in the United States, Canada, and Mexico despite a Product defect that caused fires, personal injuries, and property damage.

3. On February 23, 2023, Defendant—in conjunction with the United States Consumer Product Safety Commission ("CPSC"), Health Canada, and Mexico Procuraduría Federal del Consumidor ("Profeco")—recalled the Products, admitting the defect and fire risk for the first time, stating "[a] wire connection in the air fryers can overheat, posing fire and burn hazards."

4. On February 23, 2023, Cosori also acknowledged for the first time that it "ha[d] received 205 reports of the air fryers catching fire, burning, melting, overheating and smoking," including "10 reports of minor, superficial burns injuries and 23 reports of minor property damage." Cosori did not, however, detail what constituted minor or superficial burn injuries and property damage.

5. From June 2018 to February 23, 2023, Cosori represented that the air fryers were "safe and eco-friendly;" had "overheat protection" that would automatically shut

---

[1]     "Product(s)" include Cosori air fryers with model numbers CP158-AF, CP158-AF-R19, CP158-AF-RXW, CP158-AF-RXR, CAF-P581-BUSR, CAF-P581-AUSR, CAF-P581-RUSR, CP137-AF, CP137-AF-RXB, CP137-AF-RXR, CP137-AF-RXW, CS158-AF, CS158-AF-RXB, CS158-AF-R19, CAF-P581S-BUSR, CAF-P581S-RUSR, CAF-P581S-AUSR, CO137-AF, CO158-AF, CO158-AF-RXB, CP258-AF.

down the Products as a safety feature; and had an "automatic shutoff" which would clear all settings and turn off the Products when there was "no active cooking programs." Instead of living up to those representations, the Products posed an unreasonable risk of fire and burning, as Cosori admitted when recalling the air fryers.

6.    From June 2018 to February 23, 2023, Cosori failed to disclose to or warn consumers that the Products were at unreasonable risk of fire even though Defendant knew of that risk long before February 2023 due to consumer injury reports and reports of fires and overheating; its sophistication; the substantial length of time during which Defendant was manufacturing the defective Products (from at least June 2018 until December 2022); and the enormous number of Products impacted (2 million units).

7.    From June 2018 until February 2023, Defendant actively concealed the risk of fire. Defendant failed to disclose and actively concealed the known risk of fire even though it had exclusive knowledge of that risk (including from consumer reports of fire and injury) and understood that consumers, including Plaintiffs, depended on truthful disclosures to make their purchasing decisions and would not purchase or use Products that could cause fires. Defendant did not disclose the risk of fire because it understood that a systemic design and/or manufacturing defect in the Products rendered the Products nonmerchantable and that disclosing the risk of fire would halt sales and cost tens of millions of dollars in refunds and liability.

8.    From June 2018 until December 2022, Defendant marketed and sold the Products when Defendant understood that the Products were at unreasonable risk of fire due to systemic and readily apparent Product defects, including design, manufacturing, warning and/or instruction defects that created an unreasonable risk of fire. Defendant placed two million dangerous products into the stream of commerce, placing millions of individuals including Plaintiffs, at substantial risk of fire, injury, and even death. Defendant's misconduct offended public policy, presented a substantial and unjustifiable risk of injury to consumers, and provided no countervailing benefit to consumers considering the severe risk of personal injury and

death.

9.   In February 2023, Defendant finally admitted the risk of fire and that 205 consumers had reported fires or burning, including 33 reports of physical injury and/or property damage. Upon information and belief, Defendant was not acting altruistically. Instead, Defendant made those admissions and issued the recall due to accumulating consumer reports of fire, injuries, and property damage and/or due to intervention by the CPSC, Health Canada, or other regulatory entities.

10.  During the Class Period, Plaintiffs purchased Products that Defendant later and untimely admitted could cause fires and burning.[2]

11.  When Plaintiffs and the Class Members purchased and used the Products, they were exposed to Defendant's marketing, including reviewing misleading and inadequate Product packaging and Product web pages.

12.  Plaintiffs relied on Defendant's material misrepresentations about the Products, including misleading and incomplete representations that the Products were safe and had overheat protection. Moreover, Plaintiffs did not know and could not know through reasonable inspection that the Products could cause fires and burning, and Defendant failed to disclose that risk.

13.  Plaintiffs purchased the Products based on Defendant's representation that the Products were safe, had overheat protection, and had an automatic shut off, all of which were false or misleading misrepresentations given that the Products could cause fires. Moreover, Plaintiffs relied on Defendant's omissions and non-disclosures regarding the risk of fire, using the Products without any knowledge of the fire risk and without knowledge that Plaintiffs were placing themselves and their families at substantial risk. Had Defendant disclosed the truth, including that the Products could cause fires, Plaintiffs would not have purchased or used the Products.

14.  Plaintiffs were damaged and injured after purchasing and using the Products due to Defendant's misconduct. Based on Defendant's misrepresentations and

---

[2]      "Class Period" means the applicable statutes of limitations for Plaintiffs' claims.

omissions, Plaintiffs purchased nonmerchantable, worthless Products that were eventually recalled without a refund of the purchase price. Moreover, Plaintiffs and the Class (defined below) purchased alternative, equivalent air fryers that cost more than the Products; suffered physical injuries and property damages; and lost the use of the air fryers and spent substantial time to participate in a recall that did not provide an adequate remedy for their injuries.

15. Plaintiffs bring claims against Defendant for: (1) violating California's Unfair Competition Law; (2) violating California's False Advertising Law; (3) violating California's Consumer Legal Remedies Act (injunctive relief); (4) breach of express warranty; (5) breach of the implied warranty of merchantability; and (6) fraudulent misrepresentation/omission.

16. Plaintiffs bring claims on behalf of a national class of individuals who purchased Products during the Class Period (the "Class").

## **PARTIES**

### A.   **Plaintiffs**

17. Plaintiff Jeannette Finch is, and was at all relevant times, a resident of Washington. In February 2021, Ms. Finch purchased a recalled Cosori air fryer (Model No. CF137-AF) from Amazon.com, paying $107.

18. Plaintiff Finch reviewed the Product's Amazon.com webpage that included representations approved and provided by Defendant, and the Product packaging. Plaintiff Finch used the Product as directed without any knowledge that the Product was defective, could cause fires, and posed a substantial danger to herself and her family. Plaintiff Finch would not have purchased or used the Product had she known that the Product was defective and could cause fires.

19. Plaintiff Nam Tao is, and was at all relevant times, a resident of California. In May 2019, Mr. Tao purchased a recalled Cosori air fryer (Model No. CP158-AF) from Amazon.com, paying $100.

20. Plaintiff Tao reviewed the Product's Amazon.com webpage that included

representations approved and provided by Defendant, and the Product packaging. Plaintiff Tao used the Product as directed without any knowledge that the Product was defective, could cause fires, and posed a substantial danger to himself and his family. Plaintiff Tao would not have purchased the Product had he known that the Product was defective and could cause fires.

**B.    Defendant**

21. Defendant Arovast Corporation d/b/a Cosori Corporation is a California corporation with its principal place of business at 1202 N. Miller St., Unit A, Anaheim, CA 92806 and/or 969 North Tustin Street, #189, Orange, CA 92867. From its California headquarters in this District, Defendant and its management oversaw the production, distribution, and sale of the Products throughout the United States.

22. Defendant's sales and marketing leadership, as well as its accounting, financial, and legal departments, are all based in its California headquarters in this District. Furthermore, upon information and belief, Defendant's marketing, marketing analysis, and sales and financial documents were created and are located at its California headquarters in this District.

23. Defendant and its management—from its California headquarters—collaborated in developing, manufacturing, distributing the Products, and issuing the February 2023 recall of the Products. Upon information and belief, Defendant created and/or authorized the false and misleading representations and omissions from California.

24. Defendant's participation in designing, manufacturing, packaging, distributing, marketing, and selling the Products from its California headquarters means California has the greatest interest in the subject matter of this lawsuit.

## JURISDICTION AND VENUE

25. This Court has original jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). Minimal diversity exists between members of the proposed Class and Defendant: Defendant is a citizen of California, and Plaintiffs

are citizens of California and Washington. The amount in controversy in this action exceeds $5,000,000, exclusive of interest and costs, and there are more than 100 members in the proposed Class.

26. This Court has personal jurisdiction over this case. Defendant is incorporated in California and its principal place of business is in California, and/or Defendant is engaged in systematic and continuous business activity in California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California consumer market.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391. Defendant's principal place of business is in this District, and a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this District, including oversight of the production, distribution, and sale of the defective Products.

28. All conditions precedent to this action have occurred, been performed, or have been waived.

## **FACTUAL BACKGROUND**

**A.     Defendant, the Products, Misrepresentations and Omissions**

29. Defendant designs, manufactures, imports, distributes, warrants, markets, and sells cooking appliances and other products throughout the United States and globally, including in Canada and Mexico.

30. Defendant designed, manufactured, imported, distributed, warranted, marketed, and sold the Products throughout the United States, Canada, and Mexico between June 2018 and December 2022. The Products were manufactured in whole or in part and imported from China by Defendant.

31. Defendant sold the Products directly at Best Buy, Target and The Home Depot, and other stores nationwide and online at Amazon.com, Adorama.com, Bedbathandbeyond.com, Cosori.com, eBay.com, Homegoods.com, Kohls.com, Lowes.com, Macys.com, QVC.com, Staples.com, Vesync.com, Walmart.com, Wayfair.com, Wellbots.com and Woot.com. Defendant sold the Products from June

2018 through December 2022 (or later) for between $70 and $130.

32. During the Class Period, Defendant promoted the Products' purported cooking utility, advanced technological features, and safety features through various promotional channels, including on Defendant's own website and third-party retailer websites such as Amazon.com and Walmart.com.

33. During the Class Period, on Amazon.com, Defendant promoted the recalled Cosori 5.8 Quart Air Fryer's (Model No. CP158-AF) safety features, stating:

- Safe and Eco-friendly!
  - Overheat protection
  - Automatic Shutoff
  - The air fryer is ETL-listed with a power rating of 120V/1700W and a temperature range of 170 °–400°F.

34. During the Class Period, on Amazon.com, Defendant promoted the recalled Cosori 5.8 Quart Air Fryer (Model No. CP158-AF) as a technologically advanced, healthier means to cook food, emphasizing innovative temperature control and stating:

- Cosori Air Fryer CP158-AF Redefines the Way You Cook!
  - Crispy Results in Minutes
  - Up to 85% Less Oil Needed*
  - Eliminate Kitchen Heat-up
  - Easy Cleanup
  - Compared to regular frying
- Perfect Result with our advanced technology!
  - ThermoIQ Technology: An NTC sensor sends accurate information to the air fryer, which automatically adjusts the temperature for evenly cooked meals, this will prevent burnt or undercooked food, ensuring a flawless meal every time.

- 360° Hot Air Circulation Technology: Our air fryer cuts down on cooking time with rapid heat circulation and preheating that takes no more than 5 minutes.

35. Upon information and belief, during the Class Period, Defendant promoted the Products' utility and safety features in substantially similar ways on Product packaging and in user manuals. For instance, the user manual included with the Cosori 5.8 Quart Air Fryer (model No. CP158-AF) details the Product's safety features as follows:

- Overheat Protection
  - If the air fryer overheats, it will automatically shut down as a safety feature.
  - Let the air fryer cool down completely before using it again.
- Automatic Shutoff
  - If the air fryer has no active cooking programs, the air fryer will clear all settings and turn off after 3 minutes of inactivity.

36. During the Class Period, Defendant promoted every recalled Product model in substantially similar ways on its website, on third-party retailers' websites, and on packaging and in user manuals, marketing purported "ThermoIQ Technology," "360 Hot Air Circulation," "Overheat Protection" and/or "Automatic Shutoff" as central Product features for each recalled Product.

37. During the Class Period, Defendant positioned itself as a seller of premium cooking appliances by promoting advanced Product features—including advanced safety features—on packaging; on its website, on third-party retailer websites; and in consistent and widespread marketing campaigns. Defendant's marketing successfully cultivated a loyal customer base of consumers (including Plaintiffs) who seek and are willing to pay a substantial price premium to obtain what they believed (and Defendant represented) were technologically advanced, user-friendly, and safe cooking appliances.

38. During the Class Period, Defendant's representations were false and/or misleading as incomplete or only partially true. Contrary to Defendant's representations, and as demonstrated by the February 2023 recall and the reports of fires and overheating, the Products could not be used for any purpose (including to cook), could not adequately regulate temperature, and were at unreasonable risk of overheating despite the purported overheat protection and automatic shutoff features, creating a substantial danger of fire and burning.

39. Moreover, during the Class Period, Defendant failed to disclose on Product packaging, on its website, on third-party retailer websites, or otherwise that the Products posed a risk of fire or burning and/or that Defendant had received numerous reports of Products catching fire, burning, melting, overheating and smoking, including reports of burn injuries and property damage.

**B.    The Products Were at Risk of Fire Due to Systemic and Readily Apparent Design or Manufacturing Defects and Defendant Knew of that Risk During the Class Period**

40. Defendant is a top manufacturer and seller of cooking appliances with access to cutting-edge research and technology. As a sophisticated company, Defendant is acutely aware of potential risks to its manufacturing processes and to the ultimate users of its products. Moreover, Defendant is subject to regulatory and internal quality assurance programs that—when properly implemented—should identify existing and emerging risks to its products and end-users.

41. Defendant alone has knowledge regarding Product components and designs and the risks associated with Product components and designs, including the risk that finished Products could cause fire and burning. Defendant alone has knowledge regarding the manufacturing process for the Products and the risks associated with those manufacturing processes, including the risk that finished Products could cause fire and burning.

42. Plaintiffs and other consumers did not and could not know of latent dangers

arising from Defendant's design specifications or manufacturing processes, including the risk that the Products were at unreasonable risk of catching fire. Moreover, Plaintiffs could not reasonably discover the risk of fire or burning through inspection of the Products or other reasonable means.

43. Defendant was obligated to design the Products to prevent the risk of fire and burning and other foreseeable dangers when the Products were used in their intended and/or foreseeable fashion.

44. Upon information and belief, Defendant failed to adequately design the Products because the Products, as designed, contained a flaw that made them unreasonably dangerous and susceptible to fire, including (but not limited to):

   a. Wiring: Aluminum wiring was used throughout the Products. For appliances with high wattage (like the Products), aluminum wiring is dangerous because it can overheat through repeated expansion and contraction as the wire heats up and cools down. Moreover, aluminum is very soft and can be damaged when removing insulation or making connections. Setting aside the inherent inadequacy of aluminum wiring generally, the Products' aluminum wiring was too thin to handle the Products' high electrical output. Copper wiring does not have these flaws and is generally used by manufacturers to prevent or greatly reduce the risk of fire;

   b. Safety door switch: the Products' safety door switch is rated for 16 amps. The Products draw 15.5 amps when running, amperage that was too high for the rating creating an unreasonable risk of fire;

   c. Wire nuts: The Products' wire connectors were inadequate to handle the Products' amperage; and/or

   d. Wire connections to the heating element: The crimped connections to the aluminum wire were not soldered and could also pose a fire hazard.

45. Defendant was also required to manufacture the products to prevent the

risk of fire and other foreseeable dangers when the Products were used in their intended and/or foreseeable fashion, including by implementing rigorous quality control and inspection measures that would prevent finished Products from overheating or catching fire.

46. To the extent the Products' design did not originate from inherent flaws with the Products' design, Defendant's manufacturing process was defective and caused the Products to deviate from Cosori's Product designs and specifications, leading to an unreasonable risk of fire, including by:

    a.    Using aluminum wiring or too-thin aluminum wire;

    b.    Using faulty components in the safety door switch;

    c.    Using faulty wire nut and connection components; and/or

    d.    Implementing inadequate quality control, audit, and inspection measures

47. At this early stage, Plaintiffs cannot be sure of the precise design or manufacturing defect because the design and manufacturing process is uniquely within the knowledge and control of the Defendant as manufacturer, distributor, or seller. However, under no circumstances should the Products have caught fire or have been at substantial risk of catching fire, and it is certain that the Products suffered from a manufacturing and or design defect because they did catch fire (or were at risk of catching fire); caused injuries and property damage; and were recalled by Defendant due to safety concerns arising from that fire risk. Discovery will ultimately reveal the precise nature of the Products' design or manufacturing defect, but Defendant cannot avoid liability because it alone possesses knowledge and evidence of the source of the Products' defect and unreasonable danger.

48. The Product defect in this case did not occur overnight or in limited batches or lots of Products. Instead, in February 2023, Defendant revealed that Product defect dated back to June 2018 and that two million Products sold in the United States were impacted, as well as an additional 250,000 Products sold in Canada and 21,000

Products sold in Mexico. Defendant also revealed that it had received 205 reports of the air fryers catching fire, burning, melting, overheating, and smoking, including ten reports of burn injuries and twenty-three reports of property damage.

49. Consistent with the above allegations, Defendant traced the risk of fire to a wire connection that can overheat, posing fire and burn hazards. The issue was so serious that Defendant recommended that consumers immediately stop using the Products, unplug the Products, and cut the power cord after allowing the Products to "fully cool" for at least five minutes.

50. The duration and scope of the Product defect at issue in this case (2.25 million Products and twenty Product models) strongly indicates a catastrophic or systemic failure in the Products' design and specifications or Defendant's manufacturing processes (including quality controls) during production since at least June 2018.

51. As demonstrated by Defendant's February 2023 recall (discussed further below), the Products were unreasonably dangerous and unfit for sale due to a design or manufacturing defect that made the Products unreasonable susceptible to burning and fire.

52. Moreover, the duration and scope of the Product defect and reports of fire, physical injury, and property damage raise only one plausible possibility regarding Defendant's knowledge of the substantial risk of fire. Starting in at least the beginning of the Class Period, Defendant knew of and ignored the Products' unreasonable fire risk, ignoring or downplaying that risk to prevent a severe decline in sales and the steep costs that would result from remediation efforts, all at the great expense of consumer health.

53. Defendant's knowledge, recklessness, and/or conscious misbehavior is demonstrated by the breadth of its recall and by the fact that it received 205 reports of fire and burning, including thirty-three reports of injuries and/or instances of Property damage yet continued to sell the Products without disclosing a fire risk and reports of

injuries and property damage. Astonishingly, even though Defendant was aware of the fire risk and resulting injuries and property damage, Defendant sold the products by highlighting their innovative ability to regulate temperature, as well as the Products' supposed overheat protection and automatic shutoff safety features.

54. At least as early as the beginning of the Class Period, Defendant fully understood the substantial and unreasonable risk of fire inherent in the Products' design or in Defendant's manufacturing processes but chose not to remedy the issue(s) or falsely portrayed that the risk of injury was slight to: (a) maintain the status quo; (b) substantially cut corners in the manufacturing process; (c) maximize profits; and (d) to avoid a recall and tens of millions of dollars or more in costs and liability. Defendant failed to remediate the Products' defect though the costs and viability of remediating the Products' defect was necessary and reasonable considering the substantial and actual risk of injury to consumers.

55. Defendant understood that once it revealed that the Products caught fire or were at unreasonable risk of catching fire due to pervasive manufacturing and/or design defects, it would have to halt sales and spend tens of millions of dollars to remediate the substantial risk posed by the two million Products already in the marketplace and improve its designs and manufacturing processes. Defendant sought to avoid those outcomes by concealing or downplaying the fire risk that became public in February 2023

**C.** **Defendant Had a Duty to Disclose to and Warn Plaintiffs and Consumers About the Fire Risk, the Systemic Issues That Made the Products Unreasonably Susceptible to Catching Fire, and Consumer Reports of Fire, Injuries, and Property Damage**

56. From at least the beginning of the Class Period, Defendant had a duty to disclose to, and warn, consumers, including Plaintiffs, of the risk that the Products were at risk of catching fire due to a Product defect or defects and were, in fact, catching fire and causing injuries and property damage. Plaintiffs had no reasonable access to this

information including through inspection and relied on Defendant to make prompt and complete disclosure regarding Product risks.

57. During the Class Period, Defendant possessed superior knowledge, not discoverable by Plaintiffs, regarding consumer injury reports, the substantial risk that Products could catch fire, and/or the systemic flaws in Product design or manufacturing that made the Products unreasonably susceptible to fire. During the Class Period, Defendant knew that Plaintiffs and other consumers were purchasing the Products based on Defendant's portrayal of the Products as technologically advanced cooking appliances that regulated temperature for "flawless" cooking and included safety features that prevented overheating. Defendant had a duty to disclose its superior knowledge of fire risks to Plaintiffs but did not disclose that information to wrongly protect its business.

58. During the Class Period, Defendant made incomplete and false representations that required a corrective and complete disclosure regarding fire and consumer injury reports, the substantial risk that the Products could catch fire, and/or the systemic flaws in Product design or manufacturing that made the Products unreasonably susceptible to fire. Among other things, Defendant represented on Product labeling, packaging, and in other promotional materials that the Products regulated temperature for "flawless" results and included overheat protection and automatic shutoff safety features. However, Defendant failed to disclose the substantial risk that the Products could catch fire and consumer injury reports of fires, physical injuries, and property damage even though the actual circumstances were contrary to Defendant's misleading and incomplete representations regarding Product uses and safety.

59. During the Class Period, Defendant actively concealed consumer reports of fire, physical injuries, and property damage; the substantial risk that the Products could catch fire; and/or the systemic flaws in Product design or manufacturing that made the Products unreasonably susceptible to catching fire. A manufacturer in Defendant's

position atop of the cooking appliance market, and with Defendant's sophistication, must have known of the dangers that the Products could catch dire due to readily apparent Product design and manufacturing flaws, including the use of inadequate wiring and wiring components. To the extent Defendant had any doubt that the risk of fire was material, Defendant could not have reasonably doubted the materiality of that risk as reports of fire, injuries and property damage accumulated before and during the Class Period.

60. Defendant knew that if it disclosed that the Products were unreasonably susceptible to fire (including due to systemic Product design and manufacturing defects), Plaintiffs and Class members would not have purchased or used the Products. To selfishly protect its business, Defendant was motivated to conceal the fire risk on product packaging and in other promotional mediums and/or to falsely portray that the risk of fire was immaterial.

61. Defendant's misrepresentations and omissions were material because consumers are highly concerned with Product risks, including fire risk, that could cause bodily injury or death to themselves and their families.

**D.   In February 2023, Defendant Disclosed the Fire Risk and Implemented an Inadequate Exchange Program**

62. On February 23, 2023, Defendant recalled the Products, informing consumers to immediately stop using the Products and stating that a "wire connection in the air fryers can overheat, posing fire and burn hazards."

63. In recalling the Products, Defendant noted it "ha[d] received 205 reports of the air fryers catching fire, burning, melting, overheating and smoking. These include 10 reports of minor, superficial burn injuries and 23 reports of minor property damage." Defendant provided no insight into what constitutes minor or superficial burn injuries and property damage.

64. Defendant ultimately recalled two million Products encompassing twenty Product models. Defendant noted that the Products were sold at Best Buy, Target and

The Home Depot and online at Amazon.com, Adorama.com, Bedbathandbeyond.com, Cosori.com, eBay.com, Homegoods.com, Kohls.com, Lowes.com, Macys.com, QVC.com, Staples.com, Vesync.com, Walmart.com, Wayfair.com, Wellbots.com and Woot.com from June 2018 through December 2022 for between $70 and $130.

65. Defendant's recall of the Products does not provide an adequate remedy for Plaintiffs and the proposed Class. As an initial matter, the recall does not provide refunds or other monetary compensation for purchasing replacement products or loss of the use of the Products, only Product exchanges. Defendant does not even have a process in place to provide compensation to individuals who suffered physical injury and property damage. In other words, the recall forces consumers to continue doing business with Defendant, an unscrupulous company that previously sold them defective Products at risk of catching fire when Defendant knew of that risk and had received 205 reports of fires and 33 reports of physical injury and property damage.

66. Furthermore, Defendant's exchange process is highly ineffective, leading to a much higher probability that consumers will discard defective Products or purchase replacement air fryers in frustration rather than spend the significant time and effort to receive an exchanged Product. The exchange registration requires a consumer to provide personal and shipping information; product information (including model and batch number); three product pictures, including a picture of the Product underside, front, and back with the power cord cut and a written batch number visible in all three photos; and purchase information. After purchasers provide this information, Cosori reviews the information and approves the exchange, requests more information, or denies the request.

67. Purchasers have repeatedly complained that Cosori has unfairly denied their requests for refunds and even the promised replacement products, extensively documenting a pattern and practice of Cosori delaying or denying exchanges. For example, on the Facebook group "Cosori air fryer recall is a JOKE!," 659 members are reporting dilatory tactics, baseless denials by Cosori, repeated requests by Cosori for

more product pictures, and inadequate replacements, among other issues. For example, on March 27, 2023, Kevin D. Morris wrote:

> There couldn't be a more appropriate name for a group. This recall process is a horrible joke and we're all the punchlines! After having many of the same issues early on, finally our unit was approved and we followed all steps. That was many weeks ago, and have heard nothing since. I sent an email to the email confirming our approval and all I get is a merry go round of an email saying thanks for contacting us and telling us to go thru the steps to register. It's absolutely unacceptable! Sadly if Sedgwick is involved based on their assistance with a Home Depot warranty issue…..we all will be greatly disappointed! #cosoridoesntcare!

68. Even if Cosori accepts an exchange request, the stated processing time is six to eight weeks. Worse yet, Cosori is replacing the Products with broken, inadequate, and noncomparable air fryers and other products. Cosori promoted and consumers purchased the Products based on advanced technological features, including "Smart Features with Free VeSync App" and Voice Control with Alexa/Google Assistance." Consumers, however, are reporting that Cosori's replacement products lack these features:

a. **Bill Hay**, March 28, Cosori air fryer recall is a JOKE!

> I got sent a non-smart replacement for my smart AF. I was going to just go with it, but I am disabled and being able to control things from my recliner is a huge plus. So last Sunday (March 19) I emailed them to say it was unacceptable and that I was going to complain to our state AG.
>
> Got a call the next day, with a follow up email, to say they would be sending a smart replacement. It arrived on Saturday

and works just fine.

b. **Deb Rife**, March 28, Cosori air fryer recall is a JOKE! Good luck. My digital model was replaced with something that looks like it came over on the Mayflower. I'm still trying to get it replaced with something comparable.

69. The complaints on Facebook and elsewhere online, including on Reddit.com and Twitter.com (where consumers are airing their grievances under the hashtag #cosorirecall), demonstrate that Cosori's unfair and deceptive practices continue and that the recall is not an adequate remedy for Plaintiffs and the Class.

70. Cosori fully understood that by implementing a byzantine and long-winded exchange process, very few impacted consumers would attempt to obtain and exchange their Products and even fewer consumers would successfully navigate the process. Upon information and belief, Cosori intentionally denied refunds and structured its exchange process to minimize its exposure from its unfair and deceptive business practices and to pay only a small fraction of what Plaintiffs and the Class are entitled to.

71. Ultimately, Defendant did not disclose the Products' fire risk out of concern for its customers. Instead, by February 2023, Defendant knew that it could no longer conceal or downplay the existence and risk of fire as well as the widespread design and/or manufacturing issues creating that risk based on increasing reports of fire, injuries, and property damage and based on interactions with the CPSC, Health Canada, and/or Profeco and other regulators. Defendant disclosed the risk of fire and injury reports to avoid far more severe consequences that would certainly arise if it continued to consciously ignore or conceal the risk of fire to protect its bottom-line.

**E.** **Plaintiffs' Purchases and Product Experience, Reliance on Defendant's Representations and Omissions, and Injuries**

Plaintiff Finch

72.  During the Class Period (in February 2021), Plaintiff Finch purchased from Amazon.com a recalled Product (Model No. CP158-AF) that posed an unreasonable risk of catching fire.

73.  When purchasing the Product, Plaintiff Finch was exposed to the misleading representations and omissions enumerated in Section A, supra, including representations on Product packaging and Amazon.com that the Products were effective cooking appliances, technologically advanced, and included temperature control and overheat safety features. Plaintiff Finch was also exposed to Cosori's omissions regarding fire, reports of fire, injuries, and property, damage, and/or the systemic flaws in Defendant's Product design and manufacturing leading to an unreasonable fire risk.

74.  Plaintiff Finch reviewed and relied on Defendant's representations and omissions when purchasing and using the Product and had no reason to believe the Products could cause a fire.

75.  Plaintiff Finch purchased and used the Product based on Defendant's false and misleading representations and omissions. Plaintiff Finch would not have purchased the Product had she known the truth, as the Product was worthless and presented severe risks of bodily injury or death due to the unreasonable risk of fire. Ms. Finch does not want a replacement Cosori product but instead wants compensation for Cosori's unlawful conduct.

76.  Accordingly, Plaintiff Finch was injured in fact and lost money because of Defendant's improper conduct, and Defendant's recall does not provide adequate relief for those injuries.

Plaintiff Tao

77. During the Class Period (in May 2019), Plaintiff Tao purchased from Amazon.com a recalled Product (Model No. CP137-AF) that posed an unreasonable risk of catching fire.

78. When purchasing the Product, Plaintiff Tao was exposed to the misleading representations and omissions enumerated in Section A, supra, including representations on Product packaging and Amazon.com that the Products were effective cooking appliances, technologically-advanced, and included temperature control and overheat safety features. Plaintiff Tao was also exposed to Cosori's omissions regarding fire, reports of fire, injuries, and property, damage, and/or the systemic flaws in Defendant's Product design and manufacturing leading to an unreasonable fire risk.

79. Plaintiff Tao reviewed and relied on Defendant's representations and omissions when purchasing and using the Product and had no reason to believe the Products could cause a fire.

80. Plaintiff Tao purchased and used the Product based on Defendant's false and misleading representations and omissions. Plaintiff Tao would not have purchased the Product had he known the truth, as the Product was worthless and presented severe risks of bodily injury and even death due to the unreasonable risk of fire. Mr. Tao does not want a replacement Cosori product and instead wants compensation for Cosori's misconduct.

81. Accordingly, Plaintiff Tao was injured in fact and lost money because of Defendant's improper conduct, and Defendant's recall does not provide adequate relief for those injuries.

**F.      Tolling of the Statute of Limitations and Estoppel**

82. Any applicable statutes of limitation have been tolled by Defendant's knowing and active concealment of the existence of the Products' defects and fire risk as well as by Defendant's misrepresentations and omissions. Through no fault or lack

of diligence, Plaintiffs and Class members were deceived regarding the Products' defects and fire risk and could not reasonably discover that risk or Defendant's deception through reasonable inspection or other means until Defendant revealed the truth as part of its recall of the Products on February 23, 2023.

83.   At all times, Defendant was and is under a continuous duty to disclose to Plaintiffs and Class members the true standard, quality, character, nature, and grade of the Products and to disclose the existence of known risks, including the risk that the Products could catch fire. Instead, Defendant made misrepresentations and omitted disclosure of the Products' fire risk. Defendant actively concealed the true standard, quality, character, nature, and grade of the Products and omitted material information about the quality, reliability, and characteristics of the Products. Plaintiffs and Class members reasonably relied on Defendant's knowledge and concealment of the facts alleged herein.

84.   For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment; further, Defendant is estopped from relying on any statutes of limitations in defense of this action.

## **CLASS ACTION ALLEGATIONS**

85.   Plaintiffs seek to represent and certify the following Class:

> All United States residents who purchased Products during the Class Period.
>
> The Class excludes any judge or magistrate assigned to this case, Defendant, Defendant's officers, directors, legal representatives, successors, and assigns, and any entity in which Defendant has a controlling interest.

86.   Plaintiffs satisfy the requirements of Rule 23(a) and Rule 23(b).

87.   Numerosity:   This proposed class action involves two million Products. Although the exact number of Class members is unknown to Plaintiffs, the number of individuals in the Class far exceeds forty individuals and very likely includes tens of

thousands or hundreds of thousands of individuals. As a result, the Class is so numerous that joinder of all members is impracticable.

88. The proposed Class is defined by objective criteria so that it is administratively feasible for the Court to determine whether a particular individual is a member. Class members can be identified through affidavits and/or reference to documents in Defendant's possession, custody, or control without resort to a mini-hearing on the merits.

89. <u>Commonality</u>: The questions of law and fact common to the Class predominate over any questions which may affect individual Class members. Those questions include, but are not limited to:

a. How and when Defendant's Products became at unreasonable risk of fire;

b. How and when Defendant knew or suspected that the Products were at unreasonable risk of fire, including when Defendant first received consumer reports of fire, personal injury, and property damage;

c. Whether Defendant knew or should have known about the risk that the Products were at risk of fire due to systemic design defect and manufacturing issues:

d. Whether Defendant made false and/or misleading statements and omissions concerning the Products and the risks associated with those Products and whether those statements and omissions were material and likely to deceive the public;

e. Whether Defendant's conduct violated the California Consumer Legal Remedies Act;

f. Whether Defendant engaged in unlawful, unfair, or fraudulent business practices;

g. Whether Defendant's conduct offended public policy or presented a substantial and unjustifiable risk of injury to consumers without providing any countervailing benefits;

h. Whether Defendant's representations constitute express warranties and whether Defendant violated those warranties;

i. Whether Defendant violated the implied warranties of merchantability and fitness for a particular purpose;

j. Whether Plaintiffs and the Class are entitled to restitution, damages (including statutory damages), and injunctive relief.

90. Typicality: Plaintiffs' claims are typical of those belonging to members of the Class. Plaintiffs purchased worthless Products at risk of catching fire, and suffered economic injury as a result.

91. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class, Plaintiffs have retained counsel experienced in complex class action litigation, and Plaintiffs and their chosen counsel have no interests adverse to those of the Class that they seek to represent.

Rule 23(b)(1)

92. Class action status is warranted under Rule 23(b)(1)(A). Prosecuting separate actions by or against individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.

93. Class action status is also warranted under Rule 23(b)(1)(B). Prosecuting separate actions by individual members of the Class would create a risk of adjudications with respect to individual Class members which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

Rule 23(b)(2)

94. This action is appropriate as a class action pursuant to Rule 23(b)(2) as Plaintiffs seek injunctive relief for the Class. Cosori has acted in a manner generally applicable to each member of the Class by implementing uniform recall practices and procedures designed to avoid or delay paying refunds and providing appropriate,

comparable replacement products. Plaintiffs seek to modify Cosori's recall program to allow for refunds to prevent an actual and immediate harm, a justiciable form of injunctive relief for Plaintiffs and the Class.

Rule 23(b)(3)

95. Common questions of law and fact exist as to every member of the Class and predominate over any questions solely affecting individual members of the Class, including the common questions identified above.

96. California has the greatest interest in the subject matter of this lawsuit and California law applies. To the extent the laws of other states apply, there is no material difference in the laws of those states that would impact the adjudication of the Class's claims.

97. A class action is also superior to other available means for the fair and efficient adjudication of this controversy for other reasons. The injuries suffered by individual Class members, though important to them, are relatively small compared to the burden and expense of individual prosecution needed to address Defendant's misconduct. Individualized litigation presents a potential for inconsistent or contradictory judgments. In contrast, a class action presents far fewer management difficulties; allows the hearing of claims that might otherwise go unaddressed; and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Individual class member's interests in individually controlling the prosecution of separate actions are outweighed by their interest in efficient resolution by a single class action, and it would be desirable to concentrate in this single venue the litigation of all class members who were induced to purchase and use the defective Products and were injured by Defendant's uniform conduct.

Rule 23(c)(4)

98. Alternatively, to the extent that class certification under Rule 23(b) cannot be obtained (which cannot be determined at this stage of the case), the following issues of fact or law are common to all Class members and can be resolved on behalf of the

Class through Rule 23(c)(4):

    a. How and when Defendant's Products became at unreasonable risk of fire:

    b. How and when Defendant knew or suspected that the Products were at unreasonable risk of fire, including when Defendant first received consumer reports of fire, personal injury, and property damage;

    c. Whether Defendant knew or should have known about the risk that the Products were at risk of fire due to systemic design defect and manufacturing issues:

    d. Whether Defendant made false and/or misleading statements and omissions concerning the Products and the risks associated with those Products and whether those statements and omissions were material and likely to deceive the public;

    e. Whether Defendant's conduct violated the California Consumer Legal Remedies Act;

    f. Whether Defendant engaged in unlawful, unfair, or fraudulent business practices;

    g. Whether Defendant's conduct offended public policy or presented a substantial and unjustifiable risk of injury to consumers without providing any countervailing benefits;

    h. Whether Defendant's representations constitute express warranties and whether Defendant violated those warranties;

    i. Whether Defendant violated the implied warranties of merchantability and fitness for a particular purpose; and/or

    j. Whether Plaintiffs and the Class are entitled to restitution, damages (including statutory damages), and injunctive relief.

99. Plaintiffs cannot be certain of the form and manner of proposed notice to members of the Class until the Class is finally defined and discovery is completed regarding the identity of class members. Plaintiffs anticipate, however, that notice by

mail will be given to members of the Class who can be identified specifically. In addition, notice may be published in appropriate publications, on the internet, in press releases and in similar communications in a way that is targeted to reach members of the Class.

100. Plaintiffs reserve their right to modify or amend the definition of the proposed Class at any time before the Class is certified by the Court.

### FIRST CLAIM FOR RELIEF

**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**

**(California Business and Professions Code §§ 17200 *et seq.*)**

101. Plaintiffs reallege and incorporate by reference the allegations elsewhere in the Complaint as if set forth fully herein.

102. Plaintiffs bring this claim on behalf of themselves and the Class.

103. California Business and Professions Code §§ 17200 et seq., prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

104. Defendant engaged in unlawful business acts and practices in violation of California Business and Professions Code §§ 17200 et seq., by engaging in the false and misleading advertising specified elsewhere in this Complaint:

Unlawful Business Practices

105. By proscribing "any unlawful" business practice, the UCL borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that Defendant's conduct violates (at least):

    a. California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq.;

    b. California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; and

c.  Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C.

§ 45(a), which prohibits unfair or deceptive acts or practices in or affecting

commerce.

Unfair Business Practices

106.  California Business and Professions Code §§ 17200 et seq., prohibits acts of unfair competition. Unfair competition includes (a) conduct tethered to any underlying constitutional, statutory or regulatory provision; (b) conduct that offends public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (c) conduct with an injurious impact on the victim that outweighs the reasons, justifications and motives of the alleged wrongdoer.

107.  Here, Defendant's misconduct violates the "unfair" prong of the UCL. Defendant knew of and consciously disregarded or downplayed and falsely minimized the readily foreseeable risk that the Products could cause fires. Defendant also consciously disregarded or downplayed and falsely minimized systemic manufacturing and/or design issues that would inevitably lead to that risk and consumer reports of fire and personal injuries and property damage.

108.  By ignoring those risks, Defendant manufactured and placed into the stream of commerce two million unreasonable dangerous Products susceptible to catching fire and burning and causing physical injury and property damage. Moreover, Defendant misrepresented and omitted material information regarding the Products' uses and utility without indicating to consumers in any way that the Products could cause fires. Even now, Defendant has implemented recall patterns and practices to minimize its exposure for its sustained unfair and unconscionable business practices.

109.  Defendant's misconduct caused consumers, including Plaintiffs, to buy worthless Products that can cause fires, resulting in physical injuries and even death.

110.  Defendant's misconduct was tethered to underlying statutory and regulatory violations; offended publicly; and was unfair and substantially injurious to Plaintiffs and the Class. Defendant's misconduct is not outweighed by any

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

countervailing benefits to consumers or competition, and Plaintiffs and the Class suffered injuries that could not be avoided because of Defendant's subterfuge.

Fraudulent Business Acts or Practices

111.  California Business and Professions Code §§ 17200 et seq., prohibits fraudulent business acts or practices.

112.  The UCL prohibits fraudulent and misleading business acts and practices and business acts or practices that although technically true either mislead or which have a capacity, likelihood, or tendency to deceive or confuse the public.

113.  The UCL also prohibits omissions/non-disclosures that are contrary to representations actually made or omissions/non-disclosures that a defendant was obligated to disclose, including in instances where (a) the defendant is in a fiduciary relationship with the plaintiff; (b) when the defendant has exclusive knowledge of material facts not known to the plaintiff; (c) when the defendant actively conceals a material fact from the plaintiff; and (d) when the defendant makes partial representations but also suppresses some material facts.

114.  Here, the false and misleading labeling and advertising of the Products, as alleged herein, constitutes "fraudulent" business acts and practices because members of the consuming public, including Plaintiffs and the Class were deceived by the false and misleading advertising and packaging described elsewhere in the Complaint.

115.  At least as early as the beginning of the Class Period, Defendant—as a sophisticated and prominent manufacturer of cooking appliances products and based on 205 reports of fire, personal injury, and property damage—understood that the Products were at unreasonable risk of catching fire and/or that systemic inadequacies in the Products' design and manufacturing processes made the Products unreasonably susceptible to catching fire.

116.  At least as early as the beginning of the Class Period, Defendant consciously ignored those risks and/or intentionally and fraudulently downplayed and falsely minimized those risks to reduce costs, induce substantial purchases by

unsuspecting consumers, prevent a steep decline or total cessation in sales, greatly inflate profits, and avoid tens of millions of dollars of exposure and liability once the truth was revealed. Defendant could not have unwittingly produced two million units of defective products over a four-year span considering its sophistication and the readily foreseeable nature of the fire risk. Moreover, Defendant received 205 reports that the Products were catching fire, including thirty-three reports of personal injury, and property damage caused by those fires.

117.  During the Class Period, Defendant represented on Product packaging, in Product instructions, its website, and third-party websites that the Products were advanced cooking appliance appliances that included features regulating temperature for perfect performance, prevented overheating, and automatically shut-off the Products. Those representations were false and or misleading because, during the Class Period, the Products were at unreasonable risk of catching fire. Defendant's misrepresentations and partial truths were material because they related to Product uses and consumer health and safety.

118.  Alternatively, Defendant's representations, although technically true, had a capacity to mislead consumers because although the Products could be used for cooking purposes, they could only be used for cooking with an attendant and unreasonable risk to consumer health and safety. Defendant's misrepresentations and partial truths were material because they related to Product uses and consumer health.

119.  Defendant's omissions/non-disclosures are also material and actionable under the UCL. Defendant's omissions were contrary to representations already made or Defendant had a duty to disclose the risks of fire because: (a) Defendant had exclusive knowledge of those material risks not known to Plaintiffs; (b) Defendant actively concealed those risks from Plaintiffs, including on packaging; and (c) Defendant makes partial representations regarding the Products while suppressing facts concerning the Products' risk of catching fire. Defendant's omissions/non-disclosures were material because they related to Product uses and consumer health and safety.

120.  Defendant leveraged its deception to induce Plaintiffs and the Class to purchase products that were of lesser value and quality than advertised. Plaintiffs and the Class reviewed and relied on Defendant's representations and omissions and were denied the benefit of the bargain when they decided to purchase the Products over competitor products which did not catch fire and were safe to use. Had Defendant not made false and misleading statements and used false and misleading advertising tactics, Plaintiffs and the Class would have paid far less than what they did for the Products or would not have purchased the Products at all.

121.  The foregoing acts and practices have detrimentally impacted competition and caused substantial harm to Plaintiffs, the Class, and the consuming public. Plaintiffs and Class members were misled and suffered injuries and lost money or property as a direct and proximate result of Defendant's unlawful business practices.

122.  By reason of the foregoing, Defendant should be required to disgorge its illicit profits, make restitution to Plaintiffs and the Class, and pay for Plaintiffs' and the Class's attorneys' fees.

123.  Plaintiffs reserve the right to identify additional provisions of law violated by Defendant as further investigation and discovery warrants.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (California Business and Professions Code §§ 17500 *et seq.*)

124.  Plaintiffs reallege and incorporate by reference the allegations elsewhere in the Complaint as if set forth fully herein.

125.  Plaintiffs bring this claim on behalf of themselves and the Class.

126.  The FAL prohibits any "unfair, deceptive, untrue, or misleading advertising." Cal. Bus. and Prof. Code § 17500. The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.

127.  Defendant's acts and practices as described herein have deceived and/or

are likely to deceive Plaintiffs, the Class, and the public. During the Class Period, Defendant repeatedly advertised that the Products were safe and included features that would regulate temperature and prevent overheating and automatically shut-off the Products when not in use even though the Products were at risk of catching fire based on known Product design and/or manufacturing defects. Furthermore, at least as early as the beginning of the Class Period, Defendant failed to disclose that the Products were at an unreasonable risk of catching fire due to systemic design and manufacturing defects, despite Defendant's knowledge of those risks and reports of fire and consumer injuries and property damage. Defendant's representations and omissions were material because they related to Product uses and consumer health.

128.  The advertisements, labeling, policies, acts, and practices described herein were designed to, and did, result in the purchase and use of the Products without consumer knowledge that the Products were at risk of catching fire. Plaintiffs reviewed and relied on Defendant's packaging and purchased and used the Products wrongly believing in their general utility and safety and without any knowledge that the Products were at risk of catching fire. Plaintiffs and the Class have suffered injury in fact and have lost money or property as a result.

129.  The misrepresentations and omissions by Defendant of the material facts detailed elsewhere in this Complaint constitute false and misleading advertising. Plaintiffs and the Class reviewed and relied on Defendant's representations and omissions and were denied the benefit of the bargain when they decided to purchase the Products over competitor products which do not cause fires and were safe to use. Had Defendant not made false and misleading statements and used false and misleading advertising tactics, Plaintiffs and the Class would have paid far less than what they did for the Products or would not have purchased the Products at all.

130.  By reason of the foregoing, Defendant should be required to disgorge its illicit profits, make restitution to Plaintiffs and Class, and pay for Plaintiffs' and the Class's attorneys' fees.

## THIRD CLAIM FOR RELIEF

## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT

### (California Civil Code §§ 1750 *et seq.*)

131. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

132. Plaintiffs bring this claim on behalf of themselves and the proposed Class.

133. The CLRA has adopted a statutory scheme prohibiting various deceptive practices in connection with the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes.

134. Defendant's policies, acts, and practices were intended to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate at least the following sections of the CLRA:

a) § 1770(a)(5): which proscribes "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have";

b) § 1770(a)(7) which proscribes "[r]epresenting that goods or services are of a particular standard, quality or grade"; and

c) § 1770(a)(9): which proscribes "[a]dvertising goods or services with intent not to sell them as advertised."

135. As a proximate result of these violations by Defendant, Plaintiffs and the Class have suffered harm and damages in an amount to be determined at trial.

136. At this time, Plaintiffs only seek an injunction pursuant to Cal. Civ. Code § 1782(d) enjoining Defendant from continuing to employ the unlawful methods, acts, and practices alleged elsewhere in this Complaint, including Defendant's continuing pattern and practice of denying refunds and delaying and wrongly denying Product exchanges. If Defendant is not restrained from engaging in these practices in the future, Plaintiffs and the Class will continue to suffer harm.

137. Plaintiffs intend to amend the Complaint to seek monetary relief in accordance with the CLRA after providing Defendant with notice pursuant to Civil Code § 1782.

138. At the time of any amendment seeking damages under the CLRA, Plaintiffs will demonstrate that the violations of the CLRA were willful, oppressive, and fraudulent, thus supporting an award of exemplary damages.

139. Consequently, Plaintiffs and the Class will be entitled to actual and exemplary damages against Defendant for its violation of the CLRA. In addition, pursuant to Cal. Civ. Code § 1780(a)(2), Plaintiffs and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiffs and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to California Civil Code § 1780.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF EXPRESS WARRANTY**

140. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

141. Plaintiffs bring this claim on behalf of themselves and the proposed Class.

142. During the Class Period, Defendant made representations to the public, including Plaintiffs and the Class, by its advertising, packaging, labeling, and other means, that the Products could regulate temperature for perfect results and included features that prevented overheating and would automatically shut off the Products when not in use. That promise and related promises became part of the basis of the bargain between the parties and thus constituted an express warranty.

143. Thereon, Defendant sold the goods to Plaintiffs and the Class, who bought the goods from Defendant.

144. However, Defendant breached the express warranty in that the goods were at unreasonable risk of catching fire and burning. As a result of this breach, Plaintiffs

and the Class in fact did not receive goods as warranted by Defendant.

145. Plaintiffs were not required to provide Defendant with notice of its warranty breaches but, in an abundance of caution, provided Defendant with notice of its warranty breaches. Moreover, Defendant was on notice of its warranty breaches through interactions with regulatory agencies; at least 205 consumer reports of Product fires, including thirty-three reports of personal injury and/or property damage; and from other external and internal sources. Plaintiffs and the Class provided Defendant with an opportunity to cure its breach of warranty, to no avail. Defendant has refused to refund the purchase price of the Products.

146. Plaintiffs and Class members were in privity of contract with Defendant by virtue of their interactions with Defendant and/or its retailers, who acted as Defendant's agents.

147. Alternatively, privity of contract need not be established, and is not required, because Defendant is a manufacturer, and Plaintiffs and Class members are the intended third-party beneficiaries of the warranties between Defendant and retailers who sold the Products. Defendant's warranties were designed and intended for the benefit of consumers who purchased the Products. Defendant was aware of Plaintiffs' and Class members' reasonable expectation that the Products could reliable and safely cook food. Defendant also made direct representations and omissions to Plaintiffs and consumers through its agents, in marketing materials, its website, on third-party websites and in advertisements.

148. Any attempt to disclaim or limit Plaintiffs' warranty remedies are unconscionable and unavailing given the circumstances. As an initial matter, any attempt to disclaim Plaintiffs' warranty and other remedies occurred after Plaintiffs' purchases, were inconspicuous and were not part of the basis of the bargain or agreed to by Plaintiffs.

149. Moreover, Defendant leveraged its vastly unequal bargaining power to knowingly sell Products with uniform defects, including a defect that could cause the

Products to catch fire. Despite its vastly superior position and its exclusive knowledge, Defendant failed to inform Plaintiffs and Class members of the defect and misrepresented the reliability, quality, performance, and qualities of the Products. Instead of informing Plaintiffs and the Class of the Products' known defect that made them susceptible to catching and fire, Defendant attempted to limit its warranty and Plaintiffs' warranty and other remedies. The limited remedies Defendant offered unreasonably favor Defendant given its superior and exclusive knowledge regarding the defect, and contravene the reasonable expectations of Plaintiffs and Class members concerning the performance of the Products.

150. The time limits contained in Defendant's warranty period are also unconscionable and inadequate to protect Plaintiffs and the Class. Plaintiffs and Class members had no meaningful choice in determining these time limitations, and their terms unreasonably favor Defendant, who knowingly sold the Products containing a defect which caused the Products to catch fire and burn. There was a gross disparity in bargaining power between Defendant and Plaintiffs and Class members, and Defendant knew that the Products were defective at the time of sale and that the defect would cause premature failure.

151. As a proximate result of this breach of warranty by Defendant, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

152. Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

153. Plaintiffs bring this claim on behalf of themselves and the proposed Class.

154. Every consumer good contains an implied warranty of merchantability that they would pass without objection in the trade under the contract description; are fit for the ordinary purposes for which they are used; are adequately contained, packaged, and labeled; and that they conform to the promises and affirmations of fact

on the container or label.

155.  Moreover, during the Class Period, Defendant made representations to the public, including Plaintiffs and the Class, by its advertising, packaging, labeling, and other means, that the Products could regulate temperature for perfect results and included features that prevented overheating and automatically shut off the Products when not in use.

156.  Defendant was a merchant with respect to goods of this kind (e.g., cooking appliances) which were sold to Plaintiffs and the Class, and there was in the sale to Plaintiffs and the Class an implied warranty that those goods were merchantable.

157.  Defendant breached the implied warranty of merchantability when it sold Plaintiffs and the Class Products that, inter alia, were not fit for the ordinary purposes for which they are used (cooking) due to an unreasonable risk of fire, personal injury, and property damage, and did not conform to the promises or affirmations of fact made on the container or label.

158.  As a result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable.

159.  As a proximate result of this breach of warranty by Defendant, Plaintiffs and the Class have been damaged in an amount to be determined at trial.

<u>**SIXTH CLAIM FOR RELIEF**</u>

**FRAUDULENT MISREPRESENTATION/OMISSION**

160.  Plaintiffs reallege and incorporate the allegations elsewhere in the Complaint as if set forth fully herein.

161.  Plaintiffs bring this claim on behalf of themselves and the Class.

162.  During the Class Period, Defendant made material representations to the public, including Plaintiffs and the Class, by its advertising, packaging, labeling, and other means, that the Products were safe, could regulate temperature for perfect results, and included features that prevented overheating and automatically shut off the Products when not in use.

163. Defendant's representations were untrue or misleading because the Products were at unreasonable risk of catching fire and Defendant had received 205 reports of fire, personal injury, and property damage caused by the Products.

164. Defendant made these misrepresentations with actual knowledge of their falsity.

165. Defendant made the misrepresentations herein alleged with the intention of inducing the public to purchase Defendant's products.

166. Plaintiffs, the Class, and the consuming public saw, believed, and reasonably relied on Defendant's advertising, labeling, and packaging when purchasing the Products.

167. As a proximate result of Defendant's misrepresentations, Plaintiffs and the Class were induced to spend an amount to be determined at trial on the Products.

168. Moreover, during the Class Period, Defendant knew that the Products could catch fire and that the fire risk stemmed from systemic Product design and manufacturing defects and caused personal injuries and property damage. Defendant also knew that it had received at least 205 reports of fire and physical injuries and property damage caused by the Products, highly material facts that Plaintiffs and the Class needed to know before purchasing and using the Products.

169. During the Class Period, Defendant had a duty to disclose that information: (a) to correct prior representations that were factually incorrect; (b) due to its exclusive and superior knowledge regarding fire risks that Plaintiffs and the Class could not discover; (c) to make partial representations regarding safety, temperature control, overheat protection, and automatic shut-off not misleading; and (d) due to Defendant's active concealment of the fire risk and reports of fire, personal injury, and property damage.

170. Plaintiffs and the Class did not and could not know that the Products could catch fire, the fire risk stemmed from Product design and/or manufacturing defects, and that Defendant had received reports of fire, personal injury, and property damage.

171.  Defendant intended to deceive Plaintiffs and the Class by concealing the foregoing facts to: (a) maintain the status quo; (b) substantially cut corners in the manufacturing process; (c) maximize profits despite the severe risk to consumer health and safety; and (d) to avoid a recall and tens of millions of dollars or more in costs and liability.

172.  Had Plaintiffs and the Class known the truth, they would not have purchased the Products or would have paid much less than they did for the Products.

173.  Defendant's concealment was a substantial factor in causing Plaintiffs' and Class's harm.

### **JURY DEMAND**

174.  Plaintiffs demand a trial by jury on all issues

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, pray for relief as follows:

    a) Declaring this action to be a proper class action and certifying Plaintiffs as the representatives of the Class under Rule 23 of the Federal Rules of Civil Procedure;

    b) Issuing an injunction requiring Defendant to modify its recall to provide refunds and exchanges of comparable Products;

    c) Awarding restitution and actual, compensatory, and punitive damages;

    d) Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys, experts, and reimbursement of Plaintiffs' expenses; and

    e) Granting such other and further relief as the Court may deem just and proper.

Dated:  April 4, 2023               Respectfully submitted,

By:_____/s/ Daniel L. Keller_____
          Daniel L. Keller

**KELLER, FISHBACK & JACKSON LLP**
28720 Canwood Street, Suite 200
Agoura Hills, CA 91301
Telephone: (818) 342-7442
Facsimile: (818) 342-7616
Email: dkeller@kfjlegal.com

Stephen J. Fearon, Jr. (subject to *pro hac vice*)
Paul V. Sweeny (subject to *pro hac vice*)
**SQUITIERI & FEARON, LLP**
305 Broadway, 7th Floor
New York, New NY 10007
Telephone: (212) 421-6492
Facsimile: (212) 421-6553
Email: stephen@sfclasslaw.com
Email: paul@sfclasslaw.com

**Attorneys for Plaintiffs and the Proposed Class**